UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 15-20902-CIV-UNGARO/OTAZO-REYES

JUAN ANDRES RODRIGUEZ and all others
similarly situated under 29 U.S.C. 216(b),

      Plaintiff,

vs.

GOLD STAR INC., FIRST CLASS PARKING
SYSTEMS CORP., FIRST CLASS PARKING
SYSTEMS LLC, SEBASTIAN LOPEZ, and
JORGE ZULUAGA,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT

Pursuant to Fed.R.Civ.P. 56 and Local Rules 7.1 and 56.1 of the Southern District of Florida, Defendants, GOLD STAR INC., FIRST CLASS PARKING SYSTEMS CORP., FIRST CLASS PARKING SYSTEMS LLC, SEBASTIAN LOPEZ, and JORGE ZULUAGA (collectively, "Defendants") move for summary final judgment on the grounds there are no genuine issues as to any material fact, and, as more fully set forth in the following memorandum of law, Defendants are entitled to summary judgment as a matter of law.

## OVERVIEW

Plaintiff's duties as a valet parker did not involve interstate commerce. Plaintiff's employer, Defendant, FIRST CLASS PARKING SYSTEMS, LLC, similarly had no involvement in interstate commerce. Summary Judgment should be granted in favor of

Defendants on this basis alone.  Furthermore, Plaintiff has failed to meet his burden to prove that he performed work for which he was not properly compensated by failing to produce any evidence to show the date, the amount and extent of his work.  This is yet another basis to grant Defendants summary judgment.  Defendants, JORGE ZULUGA and SEBASTIAN LOPEZ did not have the requisite degree of control over Plaintiff's work to qualify as "employers" under the FLSA.  Lastly, besides the fact that neither Defendants, GOLD STAR, INC. nor FIRST CLASS PARKING SYSTEMS CORP. was Plaintiff's employer, neither of these entities had revenues exceeding $500,000 in any of the years relevant to this lawsuit.

For these reasons, Defendants respectfully request that the Court grant the instant Motion and enter summary final judgment against Plaintiff.

## RELEVANT PROCEDURAL HISTORY

1.      On March 3, 2015, Plaintiff filed a one-count Complaint [D.E. #1] alleging he was jointly employed by Defendants, GOLD STAR, INC., FIRST CLASS PARKING SERVICES, CORP,, FIRST CLASS PARKING SYSTEMS LLC, SEBASTIAN LOPEZ, and JORGE ZULUAGA.

2.      Plaintiff alleges he is only due overtime (half time) wages – and not regular wages – for the hours he claimed he worked.

3.      Defendants filed their Answer and Affirmative Defenses [D.E. #9] on March 31, 2015.

4.      Among their affirmative defenses, Defendants have alleged: (i) Plaintiff's Complaint fails to state a claim for which relief may be granted because Plaintiff did not directly participate in the actual movement of persons or things in interstate commerce; (ii) Plaintiff's actual employer, Defendant, FIRST CLASS PARKING SYSTEMS, LLC ("First Class LLC"),

did not engage in interstate commerce or in the production of goods for interstate commerce; (iii) Defendants, GOLD STAR, INC., FIRST CLASS PARKING SERVICES, CORP,, SEBASTIAN LOPEZ, and JORGE ZULUAGA were not Plaintiff's employer; and (iv) Defendants paid Plaintiff all sums of money to which he was entitled.

5.      Plaintiff and Defendants have exchanged written discovery.

6.      Defendants deposed Plaintiff on August 17, 2015.

7.      Plaintiff deposed the individual Defendants and the Corporate Representative on August 18, 2015.

8.      This matter is currently set for trial on the two-week calendar commencing January 25, 2016.

## MEMORANDUM OF LAW

### I.      Standard of Review

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c).  The moving party bears the burden of meeting this exacting standard.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  That is, "[t]he moving party bears 'the initial responsibility of informing the ... [C]ourt of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir. 1991), quoting *Celotex,* 477 U.S. at 323.

Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "**specific facts** showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e)(emphasis added); *see also Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines there are no genuine issues of material fact, then summary judgment will be granted. *See Celotex*, 477 U.S. at 322.

## II.    No Individual Coverage Because No Interstate Commerce

It is undisputed that there was no transfer of goods or property from Plaintiff to the persons who brought their cars to be parked. Parking a car is purely a service. It is also undisputed that Plaintiff was not "engaged in … the production of goods for commerce".[1]

Therefore, the Court must determine whether Plaintiff was engaged in commerce". *Jimenez v. Southern Parking, Inc.*, 2008 WL 4279618 (S.D. Fla. Sept. 16, 2008), a case with similar facts, is instructive as to the proper analysis for the Court to engage in with respect to individual (and enterprise coverage) under the FLSA. In *Jimenez*, the Court found there was no individual coverage under the FLSA for an employee who washed cars at a condominium where some of the products used to perform his job had once moved in interstate commerce. As the *Jimenez* Court explained:

> The FLSA's overtime provisions apply under two circumstances:
> (1) where an employee is engaged in commerce or the production
> of goods for commerce ("individual coverage") or (2) where an
> employee works for an "enterprise" engaged in commerce or in the
> production of goods for commerce ("enterprise coverage"). 29
> U.S.C §§ 206(a), 207(a); *see Ares v. Manuel Diaz Farms, Inc.*, 318
> F.3d 1054, 1056 (11th Cir.2003). "The burden of proof lies on

---

[1] As Plaintiff was involved solely in the provision of a service (parking cars), and did not produce any goods, let alone goods for commerce, he cannot be said to have "engaged in … the production of goods for commerce". *See Rivera v. Deer Run Realty Management, Inc.*, 2015 WL 4878681 at *3 (M.D.Fla Aug. 14, 2015), citing *Scott v. K.W. Max Investments, Inc.*, 2007 WL 423080 (M.D.Fla., Feb. 6, 2007).

employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Kitchings v. Florida United Methodist,* 393 F.Supp.2d 1282, 1292 n. 25 (M.D.Fla.2005) (citing *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 121, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); *Warren-Bradshaw Drilling Co. v. Hall,* 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. 83 (1942)).

\*       \*       \*

Individual coverage applies where the plaintiff is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a). **"[F]or an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel.** *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264, 1266 (11th Cir.2006). It is undisputed that the plaintiff was not engaged in the production of goods for commerce while [parking cars]. The issue is whether the plaintiff's was "engaged in commerce," as defined in 29 U.S.C. § 207(a)(1).

**When determining individual coverage, the character of the employee's activities is determinative, not the nature of the employer's business. *Overstreet v. N. Shore Corp.,* 318 U.S. 494, 498 (1943). The test, therefore, is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity."** *Id.* The application of this test to a FLSA claim is essentially a "line drawing exercise." *Alonso v. Garcia,* 147 Fed.Appx. 815, 816 (11th Cir.2005) (citing *Brennan v. Wilson Bldg., Inc.,* 478 F.2d 1090, 1094 (5th Cir. 1973)).

*Id.* at \*6-7 (ellipses and quotes in original) (emphasis added).

In his Complaint, Plaintiff alleges generally and without any specific facts whatsoever:

Both the Defendants' business and the Plaintiffs work for the Defendants affected interstate commerce for the relevant time period. Plaintiffs work for the Defendants affected interstate commerce for the relevant time period **because the materials and goods that Plaintiff used on a constant and/or continual basis**

5

**and/or that were supplied to him by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiffs use of the same. The Plaintiffs work for the Defendants was actually in and/or so closely related to the movement of commerce while he worked for the Defendants that the Fair Labor Standards Act applies to Plaintiffs work for the Defendants.**

[D.E. #1, ¶13](emphasis added).

However, as the *Jimenez* Court explained:

As the Eleventh Circuit has further explained in [*Thorne*]: "For an employee to be 'engaged in commerce' under the FLSA, he must be **directly participating in the actual movement or persons or things in interstate commerce by** (i) working for an instrumentality of interstate commerce, *e.g.* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.* regular and recurrent use of interstate telephone, telegraph, mails or travel." *Id.* (citing 29 C.F.R. § 776.23(d)(2) (2005); 29 C.F.R. § 776.24 (2005); and referring to *McLeod,* 319 U.S. at 493-98, which held that plaintiff's activities were purely local and plaintiff was not "engaged in commerce" when plaintiff merely cooked and cleaned for railroad workers).

The undersigned is bound by the Eleventh Circuit's decision in *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264 (11th Cir.2006). In *Thorne,* the Court held that **"the mere purchase of goods that previously moved in interstate commerce for intrastate use" is insufficient to implicate interstate commerce. The Court reasoned that the plaintiff, who performed mold and water damage restoration work for residential and commercial properties, was not covered by the FLSA just because in the course of his work he purchased tools that may have crossed state lines at some previous time.** *Id.; see also Guzman,* 551 F.Supp.2d at 1371 (**interpreting *Thorne* as saying that the ultimate consumers of goods that have traveled in interstate commerce are not covered by the FLSA**).

The Court finds that as a matter of law the plaintiff was not "engaged in interstate commerce" by [parking] cars .... The plaintiff has not countered the evidence proffered by the defendants that [defendant] purchased all the materials for the car wash in Florida. **Evidence that the plaintiff has used supplies**

**and equipment that have once moved in interstate commerce is insufficient to qualify him for coverage.** Ultimate consumers of products are not "engaged in commerce" just because they purchase products that have moved in interstate commerce.

There is no evidence that the plaintiff regularly used instrumentalities of interstate commerce like the telephone, mail, fax, internet, or transportation while washing cars at the condominium. … No facts exist to counter the conclusion that the plaintiff's activities [parking] cars was purely local in nature. Thus, individual coverage does not apply, as a matter of law, in the instant case.

*Jimenez*, 2008 WL 4279618 at *8 (emphasis added).[2]

Plaintiff's job description was a "runner." [JR 25].[3]  At his deposition, Plaintiff admitted his only duties were to "get the cars and park them." [JR 25].  When asked if he had any other responsibilities (other than to "get the cars and park them") while working at First Class LLC, Plaintiff responded "nothing more." [JR 25].  When asked "what running and parking cars entails" Plaintiff responded "to get the car, take it to the parking area, park it, leave the keys with the girl, and continue doing that constantly." [JR 25, 26-27].  When asked if there were any other responsibilities, Plaintiff responded, "No, none. Only that." [JR 25].  Plaintiff further admitted during his deposition that he did not handle credit card payments for the parking of cars. [JR 25];

---

[2] Significantly, Defendants are not relying on the "coming to rest" doctrine.  Instead, Defendants are relying upon the "ultimate consumer exception" to the FLSA as explained in *Thorne*.  In anticipation that Plaintiff will argue that *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010), which involves completely different facts, somehow abrogated *Thorne*, Defendants respectfully submit that if the Eleventh Circuit Court of Appeals wanted to abrogate *Thorne*, it would have explicitly done so in *Polycarpe*.

[3] Citations to the record will be made identifying the record source: Answers to Interrogatories "[Rog.]', Deposition of Corporate Representative and Jorge Zuluga "[CR]", Deposition of Plaintiff, Juan Rodriguez "[JR]" and Deposition of Sebastian Lopez "[SL]" followed by the page number, *i.e.* [Defendants' Rog. at 5] or [CR at 5]. The facts recited throughout are presented for purposes of summary judgment only.  Defendants do not intend to admit any facts not already admitted in the pleadings.

First Class LLC did not provide Plaintiff with a cell phone [JR 26]; it was never Plaintiff's job to

wash cars [JR 26]; there were not any telephones at work [JR 26]; he never used a telephone at

work to call someone [JR 26]; and he never gave the driver of the car a ticket when he picked up

the car to park it [JR 26].[4]

As in *Jimenez*, Plaintiff's work "did not sufficiently affect commerce because the

plaintiff [parked] vehicles using equipment purchased wholly within Florida and that the plaintiff

did not drive the vehicles he [parked] except … within the parking [lot]." *Id.* Accordingly, there

is no individual coverage for Plaintiff under the FLSA.

Further, the Department of Labor, Field Operations Handbook, April 22, 1994, Section

11b00(e) instructs:

> However, **individual coverage shall not be asserted for bank
> employees who operate an adjacent parking lot** for the
> convenience of bank customers. They **cannot be said to be either
> engaged in activities so closely related to the movement of the
> interstate commerce, nor are they engaged in processes or
> operations so closely related and directly essential to the
> production of goods for interstate commerce** by other
> employees of the bank.

(emphasis added).[5]   "Although not entitled to *Chevron* deference, the Department of Labor's

Field Operations Handbook has been held to be persuasive and entitled to some weight in

judicial interpretations of the FLSA." *Lopez v. Pereyra, M.D., P.A.*, 2010 WL 335638, *5, n.4

(S.D.Fla. Jan. 29, 2010), citing *Martin v. Occupational Safety and Health Review Comm'n,* 499

---

[4] Notably, Plaintiff's duties and the act of parking cars are wholly distinct from gas station
employees who sell goods, *e.g.*, gasoline, to facilitate interstate commerce. Here, Plaintiff did
not sell anything that facilitated interstate commerce. He simply parked cars in parking lots.
The record is devoid of any evidence that the cars that Plaintiff parked affected or were involved
in interstate commerce.
[5] Analogous to this example from the Department of Labor, parking a car with the valet service
was purely voluntary; everyone had the option to park somewhere else or simply walk.

U.S. 144, 157 (1991); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1275 (11th Cir. 2008).   Just as in the bank valet example provided by the Department of Labor in its Field Operations Handbook, there is no individual coverage for Plaintiff under the FLSA.

To the extent Plaintiff claims that his parking of cars which had previously traveled in interstate commerce qualifies him as an employee "engaged in commerce", such argument has been squarely rejected by the Eleventh Circuit in *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264 (11th Cir. 2006) due to the "ultimate consumer exception":

> Moreover, the fact that some of the tools he purchased may have crossed state lines at a previous time does not in itself implicate interstate commerce. When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the Act. *McLeod,* 319 U.S. at 493, 63 S.Ct. 1248. **Courts distinguish between merchants who bring commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use.** Therefore, a customer who purchases an item from Home Depot is not engaged in commerce even if Home Depot previously purchased it from out-of-state wholesalers.

*Id*. at 1267 (italics in original)(emphasis added).  *See also Li v. Li Qin Zhao*, 35 F.Supp.3d 300, 308-9 (E.D.N.Y. 2014)(no individual coverage under FLSA for delivery driver who used, *inter alia*, an "out of state" car to make deliveries for a local restaurant); *Mendoza v. Detail Solutions, LLC*, 911 F.Supp.2d 433 (N.D. Tex. 2012)(no individual coverage for employee who washed cars manufactured out of state); *Jacobs v. Dolanlil, Inc.*, 2010 WL 1730807 at *4 (M.D.Fla. April 12, 2010)("By washing cars from out-of-state, Plaintiff is not participating in the actual movement of persons or things in interstate commerce. Accordingly, Plaintiff has not made the requisite threshold showing that he directly participated in the actual movement of persons or things in interstate commerce."); *Jimenez.* 2008 WL 4279618 at *8 ("Ultimate consumers of

products are not `engaged in commerce' just because they purchase products that have moved in interstate commerce.").

For the reasons stated above, as a matter of law, there is no individual coverage for Plaintiff under the FLSA.

**III.**    **No Enterprise Coverage Because No Interstate Commerce**

As the Eleventh Circuit instructed in *Scott v. K.W. Max Investments, Inc.*, 256 Fed.Appx. 244 (11th Cir. 2007):

> An employee may show his employer is subject to the FLSA by way of enterprise coverage if he demonstrates that the employer is an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an (2) "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

*Id*. at 247. It is undisputed that First Class LLC was not "engaged in … the production of goods for commerce" as it provided only valet parking services and produced no goods whatsoever. Therefore, to determine whether enterprise coverage exists, the Court must determine whether First Class LLC "has employees engaged in commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person". *Id*.

First Class LLC did not engage in interstate commerce or in the production of goods for interstate commerce because the business is a valet company which provides only intrastate services to its customers, not goods that have move interstate. [Defendants' Rog. #16 at 1(a)]. Just as Plaintiff does not qualify for individual coverage because his work "did not sufficiently affect commerce because the plaintiff [parked] vehicles using equipment purchased wholly

10

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

within Florida and that the plaintiff did not drive the vehicles he [parked] except … within the parking [lot]," *Jimenez*, 2008 WL 4279618 at *8, similarly, First Class LLC's other employees were not engaged in commerce and did not have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person". Accordingly, Plaintiff cannot establish enterprise coverage as to First Class LLC.

In the event Plaintiff argues that First Class LLC used products in its business that had previously traveled in interstate commerce, the record evidence shows that First Class LLC: (i) uses a golf cart purchased in Miami or Hialeah [CR 54]; (ii) provided lunch to its employees [SL 16-17]; (iii) purchased the overwhelming percentage of its goods in-state [Defendants' Rog. #8]; and (iv) purchased only a single umbrella from California in 2013 [Defendants' Rog. #14]. Nevertheless, regardless of where these products were produced, First Class LLC was the ultimate consumer of the products. **"Ultimate consumers of products are not `engaged in commerce' just because they purchase products that have moved in interstate commerce."** *Jimenez*, 2008 WL 4279618 at *8 (emphasis added). *See also Zarate v. Jamie Underground, Inc.*, 629 F.Supp.2d 1328, 1332 (S.D.Fla 2009)("Even some out-of-state purchases, such as a local business's occasional or sporadic ordering of office supplies from an out-of-state vendor are not sufficient to confer jurisdiction under the FLSA.") citing *Williams v. Signature Pools & Spas, Inc.,* 615 F.Supp.2d 1374, 1380 (S.D.Fla.2009)(quotations and internal punctuation omitted). Therefore, as a matter of law, no enterprise coverage exists as to First Class LLC. Accordingly, the Court should grant summary judgment to First Class LLC.

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

**IV.**     **As a Matter of Law, Plaintiff Has Not Carried His Burden**
        **to Show He Worked "Off The Clock" and Without Overtime Compensation**

         **1.**   *Burden of Proof Initially Rests with Plaintiff to Prove Hours Worked*

The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*, provides, in pertinent part, that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).  The Act further defines the term "employ" as "includ[ing] to suffer or permit to work." 29 U.S.C. § 203(g).  The Department of Labor's regulations explain that "[w]ork not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.  "If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 785.12.  Therefore, **"[i]n order to prevail on [his] claims in this case, [the] Plaintiff must prove that they suffered or permitted to work without compensation.**" *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007)(emphasis added).  In other words, the **"plaintiff[s] must demonstrate (1) [they] worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work."** *Id.* (emphasis added).

         **2.**   *Employer's responsibility to maintain records*

Under the FLSA, the employer generally bears the responsibility to maintain records regarding the employee's wages, hours, and other information regarding the work performed. *See Allen*, 495 F.3d at 1314-15; *see also* 29 C.F.R. § 516.2.  If the employer failed to maintain accurate and adequate records and the employer does not have convincing substitutes, then the employee can discharge the burden by proving "that [the employee] has in fact performed work

for which [the employee] was improperly compensated and … produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1315-16 (internal quotation marks omitted).  Then, the burden shifts to the employer to "bring forth evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id*.  If the employer fails to satisfy its burden, then damages may be awarded to the employee, even though the award is based on an approximate number of hours worked. *See Id.*

### 3. *Plaintiff Has Not Carried His Burden to Prove He Worked "Off The Clock" and Without Overtime Compensation*

Defendants recognize that the burden of proof can shift when an employer's records fail to track the uncompensated time.  However, this burden shifting is not automatic.  The employee must first prove "that he has in fact performed work for which he was improperly compensated" by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011)(quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)).  Significantly, only if the employee satisfies this requirement does the burden shift to his employer "to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id*.  Courts have held employees to this burden, finding against them when employees failed to carry their evidentiary burdens even where the employers lacked records. *See DiSantis v. Morgan Properties Payroll Services, Inc.*, 2010 WL 3606267 (E.D. Pa. 2010); *Carmody v. Kansas City Board of Police Commissioners*, 713 F.3d 401 (8th Cir. 2013).

In his Complaint, Plaintiff makes a generalized statement that:

> Between the period of on or about April I, 2012 through November
> 15, 2014, Plaintiff worked an average of 100 hours a week for
> Defendants and was paid an average of $7.90 per hour but was
> never paid the extra half time rate for any hours worked over 40
> hours in a week as required by the Fair Labor Standards Act.
> Plaintiff therefore claims the half time overtime rate for each hour
> worked above 40 in a week.

[D.E. #1, ¶21].  However, Plaintiff has failed to provide any answers as to *any* particular date he

worked, and therefore Plaintiff has failed to meet his burden. Plaintiff did not keep any records

of the number of hours he worked [JR 29-30].  Plaintiff does not have any papers that would help

him to remember the number of hours he worked []JR 30].  Further, Plaintiff admitted he always

signed in and out of work [JR 51].  Nevertheless, Plaintiff reviewed the Complaint before it was

filed and stated in his deposition that all the "facts" are 100% true [JR 7-8, 17], and that *he*

*worked 17 hours or more each day*. [JR 15].  Significantly, Plaintiff has failed to produce any

records or testimony of *any* specific days and hours he worked for which he was not paid.

Notably, Plaintiff did not file a Statement of Claim in this case.  Not once during the litigation

has Plaintiff identified *any* specific dates worked, specific hours worked or money owed.  As a

result, Plaintiff's FLSA claim fails as a matter of law because he has not produced sufficient

evidence to show he "has in fact performed work for which he was improperly compensated"

and "the amount and extent of that work as a matter of just and reasonable inference." *Anderson*

*v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 678-88 (1986).  Furthermore, the fact that Plaintiff is

only seeking payment of half-time wages (and not regular wages) necessarily means that he was

paid wages for all hours worked.  Significantly, Plaintiff admitted that *there was never a shift he*

*worked for First Class LLC for which he was not paid*.  [JR 37, 52].

In *DiSantis*, the district court granted summary judgment where the plaintiff relied on "vague, conclusory, and speculative testimony to support [the plaintiff's] claim that she 'often worked more than 40 hours in weeks of her employment from the start of her employment until the end of her employment.'" *Id*. at *13.  The court noted the plaintiff was unable to even give an estimate of the hours worked, much less a credible basis for any such estimate. "DiSantis's use of language such as 'sometimes' and 'pretty much' highlights the vagueness of [the plaintiff's] testimony. Further, [the plaintiff's] testimony is so scattered and inconsistent, as evidence by her references to 'pretty much every week' and 'almost every week' at some points in her testimony when she attempts to specify when she worked unpaid overtime, as compared to other parts of her testimony where she tries to narrow the time frame." *Id*. at *14.

The Eighth Circuit addressed this issue in *Carmody*, upholding the district court's ruling that Kansas City police officers failed to provide enough proof to survive summary judgment in an FLSA claim.  The police officers alleged that their captain used a flex time policy from 2006 until 2009 in which officers received flex time or time off rather than receiving overtime compensation. *Carmody*, 713 F.3d at 403.  Neither the city nor the officers tracked the accrued flex time, and the flex time was allegedly lost if not used within a short period. *Id*. The Internal Affairs Department of the Kansas City Police Department (the "IA") investigated the flex time policy and concluded that the officers worked unpaid overtime hours. *Id*.  Based on department documents, the IA investigation showed the officers had worked 481 unpaid overtime hours. *Id*.  However, the IA report could not determine whether the officers were given flex time for the unpaid overtime, and stated that the police officers were unable to "identify specific occurrences when flextime was mandated." *Id*.  The police officers sued the city, and the district court granted summary judgment for the city. *Id*. at 405.  The Eighth Circuit upheld the district court's

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

ruling, concluding that the officers' evidence was insufficient because the IA investigation could

not determine whether flex time or time off was used in lieu of overtime pay. *Id*. at 406-7.  The

court noted that the city's failure to keep accurate records allowed the district court to apply the

relaxed evidentiary standard pronounced in *Anderson*. *Id*. at 406.  Thus, the officers' initial

burden was to prove that they carried flex time hours into a new work week, or went entirely

unpaid for those hours. *Id*. at 406.  The evidence before the court demonstrated that the officers

were unable to identify specific occurrences when flextime was mandated. *Id*.  The officers also

could not provide evidence of specific dates worked, specific hours worked, or money owed. *Id*.

at 407.  Thus, the officers were unable "to identify any record evidence showing actual damages

from unpaid work in excess of forty hours per week, in violation of the FLSA." *Id*. Considering

this evidence, the Eighth Circuit concluded:

> The city's failure to provide accurate time records **reduces the officers' burden, but does not eliminate it.** Even though *Anderson* relaxes the burden of proof, **the officers must still prove the existence of damages.** *See Anderson*, 328 U.S. at 688. Viewed in the light most favorable to the officers, the officers have failed to provide any evidence of actual damages. **Without record evidence of a single hour worked over forty hours that did not receive overtime wages or flextime, the officers' unsupported estimations of the unpaid hours due are not enough.**

*Id*. (emphasis added).

Additionally, the fact that Plaintiff is only seeking payment of half-time wages (and not

regular wages) necessarily means that he was paid wages for all hours worked.  Significantly,

Plaintiff admitted that *there was never a shift he worked for First Class LLC for which he was

not paid*. [JR 37, 52].  Plaintiff has failed to adduce sufficient record evidence to show he

suffered actual damages, as is required by *Anderson*. *Anderson*, 328 U.S. at 688.  To meet his

initial burden, Plaintiff must show he worked hours for which he was not compensated.  *See Anderson*, 328 U.S. at 688; *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990) (requiring the plaintiff to produce evidence of uncompensated labor before shifting the burden).  Plaintiff has failed to do so.

Perhaps the reason Plaintiff cannot point to any specific dates for which he was not properly paid, is that he was properly paid in every instance and there is significant evidence of same.  Lopez testified that Plaintiff was paid for all of his hours worked, and Plaintiff never complained about not being paid [SL 43].  Plaintiff admitted that *there was never a shift he worked for First Class LLC for which he was not paid.*  [JR 37, 52].  The only record of the hours Plaintiff worked and was paid for are the records produced by First Class LLC.  As set forth above, Plaintiff has not provided any specific dates that he allegedly worked and was not properly paid.  Moreover, the fact that Plaintiff is only seeking payment of half-time wages (and not regular wages) necessarily means that he was paid his wages for all hours worked.  Those hours are reflected on the records produced by First Class LLC during discovery.

A defendants' failure to provide accurate time records reduces a plaintiff's burden, but does not eliminate it.  Even though *Anderson* relaxes the burden of proof, Plaintiff must still prove the existence of damages. *Anderson*, 328 U.S. at 688.  Here, Plaintiff cannot establish that First Class LLC's records are inaccurate or inadequate.  It is therefore undisputed that Plaintiff was paid for all overtime hours reported.

Viewed in the light most favorable to Plaintiff, Plaintiff has failed to provide any evidence of specific dates worked, specific hours worked and money owed. Without record evidence of a single hour worked over forty hours for which he did not receive overtime wages, Plaintiff's general, unsupported estimations of the unpaid hours due are not enough.  Plaintiff

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

cannot proffer any evidence that he was not paid for all the hours he worked, and therefore has failed to meet his burden.   This Court should grant Defendants motion for final summary judgment.

**V.        Defendants, Jorge Zuluga and Sebastian Lopez Were Not "Employers"**

Zuluga and Lopez cannot be held individually liable for violating the overtime provisions of the FLSA unless they are "employers" within the meaning of the Act. 29 U.S.C. § 207(a)(1).  Section 203 broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Supreme Court has termed the Act's employer definition "expansive" and has held that "managerial responsibilities" and "**substantial control** of the terms and conditions of the [employer's] work" create statutory employer status. *Falk v. Brennan,* 414 U.S. 190, 195 (1973)(emphasis added).

*Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), is instructive.  In *Patel*, the Eleventh Circuit Court of Appeals upheld the decision of the District Court that the defendant's status as president, director and principal stockholder of the corporation did not make him an employer under the FLSA even though he arranged the contract and worked out the details with the plaintiff; he did not take such an active role as to be held personally responsible.  *Id.* at 638.

The *Patel* Court distinguished the holding in *Donovan v. Agnew* finding that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment" were employers within the meaning of the FLSA.  *Donovan v. Agnew,* 712 F.2d at 1514.  "In contrast to the *Agnew* case, the facts in [*Patel*] indicate that the [President] did not have operational control of significant aspects of the [company's] day-to-day functions,

including compensation of employees or other matters 'in relation to an employee.'" *Patel*, 803 at 638.

Zuluaga did not control the schedule of the workers, did not supervise any workers, did not hire or fire workers, and did not fire Plaintiff. [CR 10]. Zuluga did not set the pay rate for employees. [Defendants' Rog. #16 at 5a)]. Further, Zuluaga was not present at any of the Miami Beach Convention Center events pertaining to Plaintiff. [CR 53]. Plaintiff never met with Zuluga when Plaintiff worked at Skyline (one of the condominiums serviced by First Class LLC) [JR 45].

Plaintiff testified he is unaware of who scheduled him to work each week at Skyline, and believes he simply took over someone's slot on the schedule at Skyline [JR 44].

Lopez is the Director of Operations for First Class LLC [SL 8]. His responsibilities as the Director of Operations is to make sure employees wear their uniforms and pay attention to the schedule [SL 8-9]. Lopez did not hire or fire Plaintiff [SL 12, 24]. Lopez does not hire and fire employees; does not supervise employees on a regular basis; does not set the pay rate for employees; does not keep documents in the normal course of business regarding employees [Defendants' Rog. #16 at 4(a)].

Like the president in *Patel*, Zuluga and Lopez were merely stockholders and officers of a corporation which owned a business. Neither Zuluga nor Lopez took such an active role in the day-to-day operations of First Class LLC as the corporate officers in *Agnew*. The overwhelming weight of the evidence establishes that neither Zuluga nor Lopez exercised substantial control over Plaintiff.

Even when the facts of the case are construed in a light most favorable to the Plaintiff, neither Zuluga nor Lopez can be found to have been Plaintiff's employer. There is not any

testimony or other evidence Plaintiff can point to that infers that Zuluga or Lopez had "substantial control of the terms and conditions of the [Plaintiff's] work" in order to create statutory employer status. *Falk v. Brennan,* 414 U.S. 190, 195 (1973).

**VI.     Gold Star, Inc. and First Class Parking Systems Corp.
<u>Are Exempt from the FLSA and Were Not Plaintiff's Employer</u>**

Gold Star, Inc. did not have over $500,000 in revenue at any time relevant to this lawsuit [Defendants' Rog. #7].  Gold Star, Inc. merged into First Class LLC between 2010 to 2013 [CR. 11-14].  Similarly, First Class Parking Systems Corp. did not have over $500,000 in revenue at any time relevant to this lawsuit [Defendants' Rog. #7].  Therefore, Gold Star, Inc. and First Class Parking Systems Corp. are exempt from the FLSA pursuant to 29 U.S.C. § 203(s)(1)(A). Furthermore, there is absolutely no record evidence that Plaintiff was employed by either of these entities [JR 46; SL 4; Defendants' Rog. #16 at 6a) & 7a)].

WHEREFORE, Defendants respectfully request that the Court grant the instant Motion in its entirety, and award summary judgment in favor of Defendants and against Plaintiff, and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted, November 6, 2015

<div style="margin-left:40%">

/s/ Lowell J. Kuvin
Lowell J. Kuvin
Fla. Bar No.: 53072
Sundeep K. Mullick
Fla. Bar No.: 18175
lowell@kuvinlaw.com
sunny@kuvinlaw.com
Law Office of Lowell J. Kuvin
17 East Flagler St. Suite 223
Miami, Florida 33131
Tel:     305.358.6800
Fax:    305.358.6808
*Attorney for Defendants*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**RODRIGUEZ, et al. v. FIRST CLASS PARKING SYSTEMS LLC, et al.**
**CASE #: 14-24377-CIV-UNGARO/OTAZO-REYES**

### <u>Service List</u>

| | |
|---|---|
| **Lowell J. Kuvin, Esq.** | **J.H. Zidell** |
| *Law Office of Lowell J. Kuvin* | **Steven Fraser** |
| 17 East Flagler Street, Suite 223 | *J.H. Zidell, P.A.* |
| Miami, Florida 33131 | 300 71st Street, Suite 605 |
| Tel.: 305.358.6800 | Miami Beach, Florida 33141 |
| Fax: 305.358.6808 | Tel: 305.865.6766 |
| Primary Email: lowell@kuvinlaw.com | Fax: 305.865.7167 |
| Secondary Email: esther@kuvinlaw.com | Email: ZAbogado@aol.com |
| *Attorney for Defendants* | *Attorney for Plaintiff* |