UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 15-20902-CIV-OTAZO-REYES

**CONSENT CASE**

JUAN ANDRES RODRIGUEZ and all others
similarly situated under 29 U.S.C. 216(b),

    Plaintiff,

v.

GOLD STAR, INC.,
FIRST CLASS PARKING SERVICES, CORP.,
FIRST CLASS PARKING SYSTEMS LLC,
SEBASTIAN LOPEZ, and
JORGE ZULUAGA,

    Defendants.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants Gold Star, Inc. ("Gold Star"), First Class Parking Services, Corp. ("First Class Corp."), First Class Parking Systems LLC ("First Class LLC"), Sebastian Lopez ("Lopez"), and Jorge Zuluaga's ("Zuluaga") (collectively, "Defendants") Motion for Summary Final Judgment (hereafter, "Defendant's Motion") [D.E. 39]; and Plaintiff Juan Andres Rodriguez's ("Plaintiff" or "Rodriguez") Motion for Summary Final Judgment (hereafter, "Plaintiff's Motion") [D.E. 41] (Defendants' Motion and Plaintiff's Motion collectively, "Cross-Motions for Summary Judgment"). The Court heard oral argument on the Cross-Motions for Summary Judgment at the Pretrial Conference held on February 4, 2016 [D.E. 74]. For the reasons stated below, the Court grants Defendants' Motion and denies Plaintiff's Motion.

## **PROCEDURAL BACKGROUND**

Rodriguez brings this action pursuant to the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. §§ 201-216. He asserts a single claim for unpaid overtime wages under 29 U.S.C. § 207(a)(1), which provides that if an employer employs an employee for more than forty hours in any work week, the employer must compensate the employee for hours in excess of forty at the rate of at least one and one half times the employee's regular rate. 29 U.S.C. § 207(a)(1). Rodriguez alleges that Defendants Gold Star, First Class Corp., and First Class LLC were his joint employers when he worked as a valet parker/runner for the period from April 1, 2012 through November 15, 2014.[1] He further alleges that Defendants Lopez and Zuluaga were his individual employers pursuant to 29 U.S.C. § 203(d).

In their Cross-Motions for Summary Final Judgment, the parties present the following issues:

(1) Whether Rodriguez is covered by the FLSA under the Act's individual coverage prong.

(2) Whether Rodriguez is covered by the FLSA under the Act's enterprise coverage prong.

(3) Whether Lopez and Zuluaga are liable as individual employers.

(4) Whether Gold Star and First Class Corp. were Rodriguez's employers and subject to the FLSA.

(5) Whether Rodriguez has carried his burden of showing that he worked "off-the-clock" without overtime compensation; i.e., established liability.

As more fully discussed below, the undersigned finds that Rodriguez has not carried his burden of establishing that he is covered by the FLSA under the Act's individual coverage prong or enterprise coverage prong. Therefore, Defendants are entitled to a judgment of non-liability

---

[1] However, in an affidavit filed in connection with the Cross-Motions for Summary Judgment, Rodriguez averred that his dates of employment were from April 11, 2012 through May 15, 2014 [D.E. 41-4 ¶ 3].

2

as a matter of law with respect to Rodriguez's single claim for unpaid overtime wages pursuant to the FLSA. Given this conclusion, the Court need not address the remaining issues presented by the parties.

## APPLICABLE LAW

I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 322-23. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence upon which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

II.  FLSA Coverage

The FLSA covers employees under two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce ("individual coverage prong"); and (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce ("enterprise coverage prong"). 29 U.S.C §§ 206(a), 207(a). "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." Kitchings v. Fla. United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 121 (1946); Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90 (1942)).

Because valet parking is a service, the "production of goods for commerce" option is not applicable in this case. Therefore, the FLSA coverage analysis is limited to the "engaged in commerce" option for both the individual coverage prong and the enterprise coverage prong.

*1.  Individual coverage prong*

"[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." Thorne v. All

4

Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). The test for determining whether an employee is engaged in commerce is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429 (1955).

### 2.  *Enterprise coverage prong*

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that--
(A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A). Materials, as distinguished from goods in the above definition, "means tools or other articles necessary for doing or making something." Polycarpe v. E&S Landscaping Servs. Inc., 616 F.3d 1217, 1224 (11th Cir. 2010).[2]

## UNDISPUTED MATERIAL FACTS

1. First Class LLC is a valet parking company.

2. Rodriguez was an employee of First Class LLC during the relevant time period.

3. Rodriguez worked at Skyline Condominium ("Skyline").

---

[2] In Polycarpe, the Eleventh Circuit put to rest the "coming to rest" doctrine in the context of enterprise coverage. As explained by the Eleventh Circuit:
> An erroneous view of FLSA enterprise coverage—one that hangs on what is called the "coming to rest" doctrine—is at odds with this statutory text. The "coming to rest" doctrine is the belief that interstate goods or materials can lose their interstate quality if the items have already come to rest within a state before intrastate purchase by a business.

Polycarpe, 616 F.3d at 1221.

4. Rodriguez only visited the First Class LLC office no more than two times throughout his employment.

5. Rodriguez did not receive credit card payments for the parking of cars.

6. First Class LLC did not provide Rodriguez with a cell phone.

7. It was never Rodriguez's job to wash cars.

8. There were not any telephones at work.

9. Rodriguez never used a telephone at work to call someone.

10. Rodriguez never gave the driver of the car a ticket when he picked up the car to park it.

11. When Rodriguez worked at the Miami Beach Convention Center ("Convention Center"), his job was a runner with the same responsibilities as when he worked as a runner at Skyline.

12. Rodriguez testified as follows in his deposition [D.E. 39-3 at 7]:

> Q. What was your job description?
> A. My position?
> Q. Yes, please.
> A. Runner.
> Q. What does that mean?
> A. I'd get the cars and park them.
> Q. What else were your responsibilities?
> A. Nothing more.
> Q. And tell me what runner and parking cars entails? What happens? Take me through a scenario.
> A. The runner has to get the car, take it to the parking area, park it, leave the keys with the girl and continue doing that constantly.
> Q. What other responsibilities?
> A. No, none. Only that.

13. First Class LLC's annual gross volume of business was $500,000 or more during the relevant time period.

14. Zuluaga testified in his deposition [D.E. 39-1 at 14] that First Class LLC had one

6

golf cart during the relevant time period, which had been purchased used. Plaintiff adduced no record evidence regarding the provenance of the golf cart.

15. In response to Plaintiff's interrogatories, Defendants provided the following verified answers [D.E. 39-4 at 4-5]: the valet tickets and shirts used in the valet parking business were purchased from local vendors; the car key lock boxes/cabinets and street cones were provided by the parking venues; no valet attendant booths were used; two valet podiums and an umbrella were purchased in California.

16. Plaintiff adduced no further record evidence regarding the provenance of the valet tickets and shirts used in the valet parking business.

17. Zuluaga testified in his deposition [D.E. 39-1 at 27] that the kinds of cars parked in Defendants' valet parking business included Mercedes, Mazdas, Nissans, Hondas, Toyotas, and BMWs.

18. In an affidavit filed in connection with the Cross-Motions for Summary Judgment, Rodriguez averred that he regularly parked cars with license plates from states other than Florida [D.E. 41-4 ¶ 6].

## DISCUSSION

Rodriguez's argument for individual and enterprise coverage under the FLSA is best summarized by this statement:

> [A] valet company as a class of business is likely covered by the FLSA, just for being a valet. The nature of the job is commerce services involving automobiles – objects which are not only products of interstate commerce, but *instrumentalities* of interstate commerce. . . . The facts of how valet companies work, however, should reveal that the very nature of the job is interstate commerce, or at the very least, services regarding the instrumentalities of interstate commerce pursuant to 29 C.F.R. § 776.11.

See Plaintiff's Reply in Response to Defendants' Opposition to Plaintiff's Motion for Summary

Judgment (hereafter, "Plaintiff's Reply") [D.E. 59 at 2].[3]

Essentially, Rodriguez is asking this Court to issue a ruling, as a matter of law, that any employee involved with parking cars is necessarily engaged in commerce. The test, however, is not as loose as Rodriguez proposes. To carry the burden of showing that he, as a valet runner, was engaged in commerce Rodriguez would need to show that his "work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell, 349 U.S. at 429. Rodriguez has adduced no facts that would support such a finding.

To buttress his position, Rodriguez asks the Court to take judicial notice of the following:

> It should be widely known and indisputable that no cars are manufactured in Florida, and that cars are widely used by people to travel interstate. Further, convention centers cater to and facilitate interstate commerce by their very nature. The very purpose of convention centers is to bring together people from all over the world in commerce. A valet helping a visitor to the convention center park their car is to help individuals from outside of Florida participate in interstate commerce.

See Plaintiff's Reply, at 3.

While Zuluaga testified in his deposition that the kinds of cars parked in Defendants' valet parking business included Mercedes, Mazdas, Nissans, Hondas, Toyotas, and BMWs, and Rodriguez averred in his affidavit that he regularly parked cars with license plates from states other than Florida, the activity of parking these cars at the Skyline and the Convention Center was an isolated local activity rather than a part of interstate commerce. There is no evidence that the parking of cars at these venues was "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce." Mitchell, 349 U.S. at 429. And the fact that

---

[3] 26 C.F.R. § 776.11, "Employees doing work related to instrumentalities of commerce" does not cover valet parking. The employees described therein are those "performing the work involved in the maintenance, repair, or improvement of existing instrumentalities of commerce." 26 C.F.R. § 776.11. There is no mention of automobiles in the C.F.R.

8

the drivers of the cars that were being parked were attending events at the Convention Center does not change this result. It was the cars, not their drivers, that were being parked.

In an abundance of caution, the Court addresses one additional issue even though Plaintiff appears to have waived it both in his papers and at oral argument. As noted above, the "coming to rest" doctrine is no longer viable in the Eleventh Circuit. Polycarpe, 616 F.3d at 1221. Thus, to determine if, during the relevant time period, First Class LLC "ha[d] employees handling . . . materials that have been moved in or produced for commerce by any person," 29 U.S.C. § 203(s)(1)(A)(i), the question is not where First Class LLC bought the materials but where they were produced. Polycarpe, 616 F.3d at 1221. Here, Plaintiff has failed to carry his burden under 29 U.S.C. § 203(s)(1)(A)(i). As noted above, it is undisputed that a golf cart, valet tickets, and shirts used in the valet parking business were bought in Florida and that Plaintiff failed to adduce further record evidence regarding their provenance. Moreover, while two valet podiums and an umbrella were purchased in California, these isolated items are insufficient to satisfy the enterprise coverage prong. See Zarate v. Jamie Underground, Inc., 629 F. Supp. 2d 1328, 1332 (S.D. Fla. 2009) ("Even some out-of-state purchases, such as a local business's occasional or sporadic ordering of office supplies from an out-of-state vendor, are not sufficient to confer jurisdiction under the FLSA."). Indeed, Plaintiff does not even mention these items when arguing for enterprise coverage, focusing instead on the cars that were parked. See Plaintiff's Motion [D.E. 41 at 8].

## CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Final Judgment [D.E. 39] is GRANTED and Plaintiff's Motion for Summary Final Judgment [D.E. 41] is

9

DENIED. In accordance with Fed. R. Civ. P. 58, the Court will enter a separate Final Judgment in favor of Defendants.

DONE AND ORDERED in Chambers at Miami, Florida this 2nd day of March, 2016.

*[signature]*
ALICIA M. OTAZO REYES
UNITED STATES MAGISTRATE JUDGE


cc: Counsel of Record