UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:15-CV-20902-OTAZO-REYES

[CONSENT CASE]

JUAN ANDRES RODRIGUEZ and all others )
similarly situated under 29 U.S.C. 216(b), )
)
       Plaintiff, )
  vs. )
)
GOLD STAR, INC. )
FIRST CLASS PARKING SERVICES, )
CORP., )
FIRST CLASS PARKING SYSTEMS LLC, )
SEBASTIAN LOPEZ, )
JORGE ZULUAGA, )
)
      Defendants. )
_____)

## PLAINTIFF'S MOTION FOR RECONSIDERATION REGARDING [DE75]

**COMES NOW** the Plaintiff, by and through counsel, and hereby files this Motion as follows regarding the Court's Order [DE75]:

## INTRODUCTION

1. This matter sounds under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages under 29 U.S.C. 201-216. [DE1]

2. The matter came before the Court upon Defendants' Motion for Summary Final Judgment [DE39] and Plaintiff's Motion for Summary Final Judgment [DE41] (collectively "Cross-Motion for Summary Judgment"), wherein the Court also heard oral arguments at the Pretrial Conference on February 4, 2016 [DE74].

Page **1** of **14**

3. The Court granted Defendants' Motion [DE39] and denied Plaintiff's Motion [DE41] holding that Plaintiff did not carry his burden establishing that he is covered by the FLSA under the Act's individual coverage or enterprise coverage prongs because valet parking is a service, the "production of goods for commerce" option is not applicable in this case. [DE75]. The Court limited the FLSA coverage analysis to the "engaged in commerce" option for both the individual coverage and enterprise coverage prongs. *Id.*

4. As set forth *supra,* Plaintiff's handling of automobiles as a valet for Defendants' that moved in interstate commerce is sufficient to meet the applicable standard that Plaintiff was engaged in commerce or Defendants "had employees[1] handling, selling, or otherwise working on good or materials that have been moved in or produced for commerce by any person"

5. Therefore, Plaintiff respectfully requests reconsideration of [DE75] as to the Court's ruling as enterprise jurisdiction exists under the FLSA in this case.  In the alternative, Plaintiff respectfully requests discovery be reopened for the limited purpose of conducting discovery relevant to where the vehicles were manufactured and/or produced.[2]

## MEMORANDUM OF LAW

**A. Motion for Reconsideration Standard.**

A motion *for reconsideration* may be granted upon the showing of one of three grounds: namely, "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Lewis v. Michaels Stores, Inc., 2007 U.S. Dist. LEXIS 82700 (M.D. Fla. Nov. 7, 2007* (citations omitted). Plaintiff argues that, upon further

---

[1] It is undisputed that Defendants had two or more employees regularly parked customers' cars during the relevant time period. *See* Cross-Motions for Summary Judgment.

[2] It is uncontested that these automobiles were made out of Florida – this was not an issue for Summary Judgment.

examination of controlling law, the Court erred in its analysis of FLSA coverage. Specifically, the interstate commerce prong and Plaintiff's regularly handling of automobiles as a valet for Defendants that moved prior in interstate commerce. This is sufficient to meet the applicable standard that Defendants "had employees handling, selling, or otherwise working on good or materials that have been moved in or produced for commerce by any person." Therefore, there is a need to correct clear error or manifest injustice.

### B. Plaintiff Has Established That Enterprise Jurisdiction Exists Under The FLSA In This Case.

29 U.S.C. 203(s) defines "enterprise" coverage as an enterprise where it "(i) has employees engaged in commerce or in the production of goods for commerce, or…has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."

As stated, Defendants concede their annual gross sales exceeded $500,000 for the relevant time period. Jurisdiction under the FLSA then turns on whether Defendants have employees engaged in commerce or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." Plaintiff contends that he has carried his burden of showing that Defendants, whose employees were "handling" (i.e. parking, driving, etc.) automobiles as valets for Defendants, had employees handling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and, therefore, Defendants have employees engaged in commerce as defined by the

Act. Thus, the Court erred in its analysis of FLSA coverage, specifically the interstate commerce prong, and erred in its ruling on the Parties Cross-Motions for Summary Judgment.[3]

To understand the scope of the Act we must look to the various amendments to see how they varied the original Act. As first passed the act reached only employees "engaged in commerce or the production of goods for commerce." These terms have two significant meanings. First, the Act's reach was defined in terms of employees rather than employers. Second, the "engaged in commerce" language was far short of the reach of federal power under the Commerce Clause. Despite clear Constitutional power, *See* 1961 U.S.Code Cong. & Admin.News at p. 1663, Congress rejected broader formulations based on "affecting commerce" or competition with goods produced in interstate commerce. *See Kirschbaum v. Walling,* 316 U.S. 517, 522-523, 62 S.Ct. 1116, 86 L.Ed. 1638, 1647 (1942).

Congress substantially expanded coverage under the Act in 1961 in two ways. First, it shifted the basis of coverage from employees to employers. Under the new approach an employer was

---

[3] The automobiles that Defendants' employees "handled" (i.e. drove, parked, etc.) were a mixture of foreign and domestic cars with foreign manufactured and produced both inside and outside the State of Florida and carry domestic and foreign license plates. This is uncontested. Plaintiff herein requests that the Court take judicial notice of the fact that foreign automobiles are not produced in Florida and that cars carrying foreign license plates are obviously travelling inside and outside the State of Florida (traveled in interstate commerce to arrive at Defendants' place of business). *See also Saucedo v. Phoenix Auto Sales, Inc.,* Case No. 08-cv-21156-Altonaga/Brown [DE54, FN5] (S.D. Fla. 1/5/09) ("Defendants claim Plaintiffs have failed to establish the automobiles sold by Phoenix moved in interstate commerce. As noted, Robert Norris stated Phoenix carried a mixture of foreign and domestic cars. (*See Pl. Mat. Facts* at 3 (citing *Dep. of R. Norris)*)). Plaintiffs ask the Court to take judicial notice of the fact that foreign automobiles are not produced in Florida and attached a print-out from the Toyota website to support this proposition. It is safe to assume vehicles sold at Phoenix were produced outside Florida and traveled in interstate commerce to get there.). Exhibit "A." In the alternative, in the case at bar, should the Court find that there is insufficient information in the record demonstrating the vehicles Defendants' employees were driving and parking were not produced outside of Florida, Plaintiff respectfully requests discovery be re-opened for the limited purpose of conducting discovery relevant to same.

covered if two or more of its employees were engaged in commerce or the production of goods for commerce. Once the employer was covered all of its employees received the benefits of the Act, not just those employees who were themselves engaged in commerce or the production of goods for commerce. The constitutionality of this "enterprise coverage" was considered and approved in *Maryland v. Wirtz,* 392 U.S. 183, 188-193, 88 S.Ct. 2017, 20 L.Ed.2d 1020, 1026-1029 (1968).

Second, Congress reached further than it had before under the Commerce Clause by including as an "enterprise engaged in commerce" one which had employees "handling, selling, or otherwise working on goods that have been moved in or produced for commerce . . . ." 29 U.S.C. 203(s) (emphasis added). This change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement.[4] This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character. This so-called retrospective approach was very much at issue in the congressional debates because of the possible constitutional problems. *See* S.Rept.No.145, 87th Cong., 1st Sess., 1961 U.S. Code Cong. & Admin. News pp. 1620, 1621-1624, 1662-1665, and the Minority Views of Senators Goldwater and Dirksen, id., at 1671-1672, 1689-1693, and 1695-1696. *See also* the debates in Congress, 107 Cong. Rec. 5841-5843, 6234-6237, and 6240-6241. The constitutionality of

---

[4] It is too narrow an interpretation to assume that the term "goods" and "materials" share the same statutory definition and it would be necessary to wholly ignore the 1974 amendment to 29 U.S.C. 203(s)(1)(A)(i), as well as the accompanying Senate Report. The bill adds the work "or materials" after the word "goods" to make it clear that the Congressional intent to include within this additional basis of coverage the "handling of goods consumed in the employer's business" (i.e. the automobiles). *See* S. Rep. No. 93-690, 93rd Cong., 2nd Sess. At 17 (1974); *See also Exime v. E.W. Ventures, Inc.,* Case No. 08-cv-60099, 2008 WL 5381294 (S.D. Fla. Dec. 23, 2008) (decided by this Court) and *Saucedo v. Phoenix Auto Sales, Inc.,* Case No. 08-cv-21156-Altonaga/Brown at 7-8 (S.D. Fla 1/5/09).

federal regulation of commerce based on the use or handling of goods after they have completed their interstate movement was not reached in *Maryland v. Wirtz,supra.* The lower courts that have considered it have held it to be within the Commerce Clause. *Dunlop v. Indus. Am. Corp.,* 516 F.2d 498, 500-01 (5th Cir. 1975).

As to the interstate commerce prong of enterprise coverage, on 8/31/10 the Eleventh Circuit rendered a decision in the consolidated matter of *Polycarpe et al. v. E & S Landscaping*, 616 F.3d 1217 (11th Cir. 2010). *Polycarpe* clarified that, in this Circuit, it is now of no consequence if the goods have "come to rest"--there is no continuity requirement, and enterprise coverage is triggered so long as the employees have, pursuant to 29 U.S.C. Section 203(s)(1)(A)(i), handled, sold or worked with goods "that have been moved in or produced for commerce." 616 F.3d, at *5-6 (LEXIS pagination). The *Polycarpe* Court stated that "we must vacate the judgment for the Defendant if there is a question about where the "goods" or "materials" were produced or where they have moved. The district courts will need to make some further decisions about the interstate history of the items in these cases." *Id*. Consequently, from whatever prism *Polycarpe* is analyzed, it is clear, for example, that a defendant-employer can no longer argue that the employees' handling etc. of the goods or materials, that were merely manufactured outside of Florida (when the $500,000 threshold is met), is not sufficient interstate commerce as a matter of law.

This matter is analogous to *Rodilla, et al. v. TFC-RB, LLC, et al.,* Case No. 08-cv-21352-AMS [DE100] (S.D. Fla. 11/04/09) wherein plaintiffs worked for defendants as car porters for defendants for varying lengths of time transporting rental cars for car agencies from one point to another at the Fort Lauderdale Airport so that the cars could be serviced and/or cleaned and then returned to the rental car agencies. Therein, defendants' met the $500,000 monetary threshold

requirement for FLSA coverage but contested that interstate commerce prong had been met. *Id.* In determining whether an employee is engaged in interstate commerce within the meaning of the FLSA, the courts have been "guided by practical considerations." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir. 1979)[5] (quoting *Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943)). In making this determination, the courts look to see if an employee's work "is actually in commerce or is so closely related to the movement of commerce that it is for practical purposes a part of it rather than an isolated local activity." *Id*. (citing *Mitchell v. C.W. Vollmer & Co.,* 349 U.S. 427 (1955)). Coverage for "employees doing work related to instrumentalities of commerce" is addressed 29 CFR § 776.11 which provides,

> (a) Another large category of employees covered as "engaged in commerce" is comprised of employees performing the work involved in the maintenance, repair, or improvement of existing instrumentalities of commerce. Typical illustrations of instrumentalities of commerce include...ships, vehicles, and aircraft regularly used in transportation of persons or goods in commerce; and similar fixed or movable facilities on which the flow of interstate and foreign commerce depends.
> b) It is well settled that the work of employees involved in the maintenance, repair, or improvement of such existing instrumentalities of commerce is so closely related to interstate or foreign commerce as to be in practice and in legal contemplation a part of it. Included among the employees who are thus "engaged in commerce" within the meaning of the Act are employees engaged in the maintenance or alteration and repair of ships or trucks used as instrumentalities of interstate or foreign commerce. Also, employees have been held covered as engaged in commerce where they perform such work as watching or guarding ships or vehicles which are regularly used in commerce or maintaining, watching, or guarding warehouses, railroad or equipment yards, etc., where goods moving in interstate commerce are temporarily held, or acting as porters, janitors, or in other maintenance capacities in bus

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Page **7** of **14**

> stations, railroad stations, airports, or other transportation terminals.

In *Rodilla, et al.,* for purposes of enterprise coverage, the court (the Honorable Judge Simonton) determined whether any of the defendants' employees were engaged in commerce by performing work involved in the maintenance, repair or improvement of existing instrumentalities of commerce. *Rodilla, et al. v. TFC-RB, LLC, et al.,* Case No. 08-cv-21352-AMS [DE100] (S.D. Fla. 11/04/09); *See also Hertz Drivurself Stations, Inc. v. United States,* 150 F.2d 923 (8th Cir. 1945); *Brennan v. Ventimiglia*, 356 F. Supp. 281 (N.D. Ohio 1973). The Court held that plaintiffs' work is immediately connected with maintaining and keeping the vehicles in condition for future use, which regularly includes the transportation of persons traveling across state lines, and, in this regard, the rental cars may well be considered instrumentalities of commerce, because 29 C.F.R. § 776.11 confirms that instrumentalities of commerce include vehicles regularly used in transportation of persons or goods in commerce. *Id.*

Akin to *Rodilla, et al.*, the Court should re-consider the recent decisions from the Southern District of Florida namely *Saucedo v. Phoenix Auto Sales, Inc.,* Case No. 08-cv-21156-Altonaga/Brown (S.D. Fla. 1/5/09). In *Saucedo*, the Court (the Honorable Judge Altonaga) analyzed the issue of enterprise jurisdiction under the FLSA and the question of whether such jurisdiction exists where the employer handled materials that previously moved in commerce. *Id.* In said matter, Plaintiffs were car salesmen who were employed by Defendants whose business sold a mixture of domestic and foreign vehicles that were bought from local auctions and then resold at two car lots located in South Florida. *Id.* Defendants had stipulated to the fact that their business met the monetary threshold requirement and examined the expansive applicability of interstate commerce when the monetary threshold is satisfied. *Id.* The Court held that it was sufficient that the defendant handled "automobiles that moved in interstate commerce, even

though they had previously reached an ultimate consumer…" and that it is not necessary to show under an enterprise theory that a defendant employer purchased products directly from a supplier located outside the state of Florida with respect to the interstate prong. [6] *Id.* Under *Polycarpe*, in this Circuit, it is now of no consequence if the goods have "come to rest" -- there is no continuity requirement, and enterprise coverage is triggered so long as the employees have, pursuant to 29 U.S.C. 203(s)(1)(A)(1), handled, sold, or worked with goods "that have moved in or produced for commerce." 616 F.3d, at *5-6 (LEXIS pagination).

In the case at bar, the Corporate Defendant is a valet parking company and Plaintiff worked for Defendants as a valet parker/runner. As aforementioned, Defendants' annual gross volume of business was $500,000 or more during the relevant time period, Plaintiff would get the cars for Defendants' customers, take it to the parking area, park it, leave the keys with the girl and continue doing that constantly. [DE39-3 at 7]. To buttress his position, Defendant ZULUAGA testified at his deposition that the kinds of cars parked in Defendants' valet parking business

---

[6] The automobiles that Defendants' employees "handled" (i.e. drove, parked, etc.) were a mixture of foreign and domestic cars with foreign manufactured and produced both inside and outside the State of Florida and carry domestic and foreign license plates. This is uncontested. Plaintiff herein requests that the Court take judicial notice of the fact that foreign automobiles are not produced in Florida and that cars carrying foreign license plates are obviously travelling inside and outside the State of Florida (traveled in interstate commerce to arrive at Defendants' place of business). *See also Saucedo v. Phoenix Auto Sales, Inc.,* Case No. 08-cv-21156-Altonaga/Brown [DE54, FN5] (S.D. Fla. 1/5/09) ("Defendants claim Plaintiffs have failed to establish the automobiles sold by Phoenix moved in interstate commerce. As noted, Robert Norris stated Phoenix carried a mixture of foreign and domestic cars. (*See Pl. Mat. Facts* at 3 (citing *Dep. of R. Norris)*)). Plaintiffs ask the Court to take judicial notice of the fact that foreign automobiles are not produced in Florida and attached a print-out from the Toyota website to support this proposition. It is safe to assume vehicles sold at Phoenix were produced outside Florida and traveled in interstate commerce to get there.). Exhibit "A." In the alternative, in the case at bar, should the Court find that there is insufficient information in the record demonstrating the vehicles Defendants' employees were driving and parking were not produced outside of Florida, Plaintiff respectfully requests discovery be re-opened for the limited purpose of conducting discovery relevant to same.

included Mercedes, Mazdas, Nissans, Hondas, Toyotas, and BMWs, and, Plaintiff averred in his Affidavit that he regularly parked cars with licenses from states other than Florida.[7] *See* the Cross-Motion on Summary Judgment. Plaintiff and other employees' work immediately connected with maintaining and keeping vehicles in condition for future use, which regularly includes the transportation of persons travelling across state lines, and said cars should be considered instrumentalities of commerce because C.F.R. 776.11 confirms that instrumentalities of commerce include vehicles regularly used in transportation of person or goods in commerce. *See also Hertz Drivurself Stations, Inc. v. United States,* 150 F.2d 923 (8th Cir. 1945); *Brennan v. Ventimiglia,* 356 F. Supp. 281 (N.D. Ohio 1973) (the court held that the defendants' employees were engaged in commerce, in part, because they serviced cars which had been or would be used for interstate commerce). This is bolstered by the fact that Plaintiff and other employees of Defendants moved automobiles (i.e. Toyotas, BMWs, etc.), that were foreign and domestically manufactured and produced and had foreign and domestic license plates, at Defendants' lot. *See W.D. Jackson v. Airways Parking Company,* 297 F. Supp. 1366 (N.D. Ga. 1969). Lastly, the Supreme Court has stated that the focus is on "the nature of the employee's activities rather than the character of his employer's business. Therefore, if his employees are found to be engaged in commerce, the employer cannot avoid his obligations under the Act on the ground that he is not 'engaged in commerce.' To the extent that his employees are engaged in commerce, so too is the employer." *McLeon v. Thelkeld,* 319 U.S. 491 (1943) citing *Kirschbaum v. Walling,* 316 U.S. 517, 524 (1942); *Walling v. Jacksonville Papers Co.,* 317 U.S. 564 (1943).

Consequently, under *Polycarpe,* the $500,000 threshold has been met and clearly (2) or more of Defendants' employees, on a regular basis, were handling goods and materials that originated

---

[7] It is uncontested that these automobiles were made out of Florida – this was not an issue for Summary Judgment.

from outside the state of Florida. As set forth herein, Plaintiff has successfully carried his burden of showing that Defendants, whose employees were "handling" (i.e. parking, driving, etc.) automobiles as valets for Defendants, had employees handling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and, therefore, Defendants have employees engaged in commerce as defined by the Act. Thus, the Court erred in its analysis of FLSA coverage, specifically the interstate commerce prong, and erred in its ruling on the Parties Cross-Motions for Summary Judgment

      **WHEREFORE**, PLAINTIFF RESPECTFULLY REQUESTS RECONSIDERATION OF [DE75] AS PLAINTIFF IS COVERED BY THE FLSA UNDER THE ENTERPRISE COVERAGE PRONG. IN THE ALTERNATIVE, PLAINTIFF RESPECTFULLY REQUESTS DISCOVERY BE REOPENED FOR THE LIMITED PURPOSE OF CONDUCTING DISCOVERY RELEVANT TO WHERE THE VEHICLES WERE MANUFACTURED AND/OR PRODUCED.

### CERTIFICATE OF CONFERRAL

      Defense Counsel, Lowell Kuvin, Esq., opposes the Motion.

Respectfully submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF
300-71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
305-865-6766
305-865-7167

By:_s/ Rivkah F. Jaff, Esq. ___
    Rivkah F. Jaff, Esquire
    Florida Bar No.: 107511

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY THAT A TRUE AND CORRECT
COPY OF THE FOREGOING WAS PROVIDED VIA CM/ECF ON 3/4/16 TO:**

**LOWELL J. KUVIN, ESQ.
LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET, SUITE 223
MIAMI, FL 33131
PH. 305-358-6800
FAX: 305-358-6808
EMAIL: LOWELL@KUVINLAW.COM**

**BY:_____/s/ Rivkah F. Jaff_____
RIVKAH F. JAFF, ESQ.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:15-CV-20902-OTAZO-REYES

[CONSENT CASE]

JUAN ANDRES RODRIGUEZ and all others )
similarly situated under 29 U.S.C. 216(b), )
                                          )
        Plaintiff,                        )
    vs.                                   )
                                          )
GOLD STAR, INC.                           )
FIRST CLASS PARKING SERVICES,             )
CORP.,                                    )
FIRST CLASS PARKING SYSTEMS LLC,          )
SEBASTIAN LOPEZ,                          )
JORGE ZULUAGA,                            )
                                          )
        Defendants.                       )
_____   )

## ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION REGARDING [DE75]

This cause, having come before the Court on the Plaintiff's above-described motion, and the Court being duly advised in the premises, it is ORDERED AND ADJUDGED that said motion is granted and therefore:

Upon reconsideration of the Court's Order [DE75], the Court rules as follows.

DONE AND ORDERED in chambers in Miami-Dade, Florida, on this _____ day of _____, 2015.

_____
ALICIA OTAZO-REYES

                                                         UNITED STATES MAGISTRATE JUDGE

Copies to: Counsel of Record